IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**FRIENDS OF ANIMALS**,

    Plaintiff,

v.

**UNITED STATES BUREAU OF LAND MANAGEMENT**,

    Defendant.

Case No. 2:16-cv-1670-SI

**OPINION AND ORDER**

R. Scott Jerger, FIELD JERGER LLP, 621 SW Morrison Street, Suite 1225, Portland, Oregon 97205; Michael Ray Harris, FRIENDS OF ANIMALS, 7500 E. Arapahoe Road, Suite 385, Centennial, Colorado 80112. Of Attorneys for Plaintiff.

John C. Cruden, Assistant Attorney General, and Lucinda J. Bach, Trial Attorney, U.S. DEPARTMENT OF JUSTICE, 601 D Street, NW, Washington, DC 20004. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

      Plaintiff, Friends of Animals ("FOA"), challenges the August 28, 2016 emergency decision of the U.S. Bureau of Land Management ("BLM") to remove wild horses from the Three Fingers Herd Management Area ("HMA") and its subsequent round-up and removal of 155 horses. FOA alleges that BLM's actions violate both the 1971 Wild Free-Roaming Horses and Burros Act ("WFRHBA"), 16 U.S.C. §§ 1331, *et seq.*, and the National Environmental

PAGE 1 – OPINION AND ORDER

Policy Act ("NEPA"), 42 U.S.C. §§ 4321, *et seq*. After BLM filed a motion to dismiss based in part on mootness (ECF 24), FOA filed a motion for leave to take limited discovery. FOA seeks leave to serve interrogatories, requests for production, and requests for admissions limited to the issue of whether BLM is able to return some or all of the removed horses to the HMA. For the reasons explained below, the Court grants FOA leave to take limited discovery as requested.

## STANDARDS

A federal court does not have jurisdiction "to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it." *Church of Scientology of CA v. U.S.*, 506 U.S. 9, 12 (1992) (quoting *Mills v. Green*, 159 U.S. 651, 653 (1895)). "A claim is moot if it has lost its character as a present, live controversy." *Rosemere Neighborhood Ass'n v. U.S. Envtl. Prot. Agency*, 581 F.3d 1169, 1172-73 (9th Cir. 2009) (quoting *Am. Rivers v. Nat'l Marine Fisheries Serv.*, 126 F.3d 1118, 1123 (9th Cir. 1997)). To determine mootness, "the question is not whether the precise relief sought at the time the application for an injunction was filed is still available. The question is whether there can be *any* effective relief." *NW Envtl. Def. Ctr. v. Gordon*, 849 F.2d 1241, 1244-45 (9th Cir. 1988) (quoting *Garcia v. Lawn*, 805 F.2d 1400, 1403 (9th Cir. 1986)) (emphasis in original). If a course of action is mostly completed but modifications can be made that could alleviate the harm suffered by plaintiff's injury, the issue is not moot. *Tyler v. Cuomo*, 236 F.3d 1124, 1137 (9th Cir. 2000). A case becomes moot "only when it is impossible for a court to grant *any* effectual relief whatever to the prevailing party." *Chafin v. Chafin*, 133 S.Ct. 1017, 1023 (2013) (emphasis added) (citation omitted). The party alleging mootness bears a "heavy" burden to establish that this Court can provide no effective relief. *Karuk Tribe of Cal. v. U.S. Forest Service*, 681 F.3d 1006, 1017 (9th Cir. 2012) (quoting *Forest Guardians v. Johanns*, 450 F.3d 455, 461 (9th Cir. 2006)).

PAGE 2 – OPINION AND ORDER

When a party requests discovery to respond to a motion to dismiss on jurisdictional grounds, a court ordinarily should grant discovery "where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Laub v. U.S. Dep't of the Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003) (quoting *Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986)) (discussing discovery in the context of standing). On the other hand, "a refusal to grant discovery to establish jurisdiction is not an abuse of discretion when 'it is clear that further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction.'" *Id.* (quoting *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 430 n.24 (9th Cir. 1977)).

## BACKGROUND

On August 17, 2016, FOA filed it complaint in this case, challenging BLM's June 2016 Decision Record supporting a round-up of approximately 100 wild horses from the Three Fingers HMA. ECF 1. BLM scheduled the round-up to begin on August 23, 2016. First Am. Compl. (ECF 22) ¶ 44. On or about August 21, 2016, the Cherry Road wildfire erupted along the Oregon-Idaho border, near the town of Homedale, Idaho. *Id.* ¶ 55. According to BLM, the fire "burned 90% of the Wildhorse Basin Pasture in the Three Fingers HMA, which represents approximately 50% of the range used by wild horses within the HMA." ECF 24 at 9. Because the fire burned the area where BLM planned to conduct the round-up, BLM withdrew its June Decision Record and abandoned its plans for the August 23 round-up. *Id.*

During the Cherry Road wildfire, BLM conducted "daily monitoring" of the fire, which BLM claims uncovered the need for an emergency gather of approximately 150 horses from the Three Fingers HMA. *Id.* BLM asserts that its monitoring revealed the following four observations that led to the emergency gather: (1) only a few islands of forage with nearby sources of water remained; (2) horses searched for unburned grass, ate burnt grass, and heavily

PAGE 3 – OPINION AND ORDER

grazed on remaining vegetation "until nothing edible remained"; (3) horses returned to their preferred grazing areas even though those areas were entirely burnt; and (4) horses travelled long distances in search of food. *Id.* On August 28, 2016, BLM posted a Full Force and Effect Decision on its website, authorizing an emergency gather. The gather began the next day, August 29, and was completed by September 1, 2016. A total of 155 horses were removed as a part of this emergency gather and were entered into BLM's Adopt-A-Horse program.

FOA filed its First Amended Complaint on September 1, 2016, challenging BLM's emergency gather. ECF 22. FOA alleges that BLM, through its emergency Full Force and Effect Decision and associated gather, violated the WFRHBA and NEPA. BLM responded by filing a motion to dismiss, arguing, in part, that FOA's First Amended Complaint is moot because the challenged gather had already taken place and cannot be undone. On November 15, 2016, FOA filed its pending motion for limited discovery before being required to respond to BLM's motion to dismiss.

## DISCUSSION

BLM argues that FOA's claims are moot because all actions approved by the emergency Full Force and Effect Decision are completed and cannot be reversed. FOA responds that limited discovery is needed to dispute BLM's assertion that the August 28, 2016, emergency gather cannot be undone or redressed. FOA argues that it needs to know if any legitimate obstacles preclude BLM from using management methods other than permanent removal of the horses from the HMA to meet its statutory obligations. Specifically, FOA seeks to discover whether BLM could, if ordered by the Court, return horses back to the HMA pending NEPA compliance. FOA argues that the facts needed to answer this question lie peculiarly within BLM.

BLM notes that the August 28, 2016, emergency Full Force and Effect Decision merely authorized a one-time removal in response to the Cherry Road fire and that the removal has been

PAGE 4 – OPINION AND ORDER

completed. BLM argues that the Full Force and Effect Decision makes no mention of potentially returning any of the removed horses to the HMA; therefore, no amount of discovery regarding alternatives or the possibility of returning horses to the HMA could make this a present, live controversy appropriately within the jurisdiction of the Court.

Although the emergency Full Force and Effect Decision does not expressly discuss returning horses to the HMA, it does approve inclusion of "removed, excess horses" in the BLM adoption program. This is effectively a decision not to return any of the removed horses to the HMA. BLM does not argue that horses entered into the adoption program cannot later be removed from the adoption program and returned to the HMA. BLM notes only that there is no current plan immediately to return any of the horses because returning them now would conflict with post-fire restoration efforts. Thus, this portion of the Full Force and Effect Decision does not constitute a fully completed action rendering the dispute moot because at least some of the removed horses are still within BLM's control and could be returned to the HMA.

Moreover, for purpose of a mootness analysis, the key question is whether the Court can provide *any* relief to remedy the harms alleged by FOA. If FOA can show that BLM unlawfully removed the horses and that some of the horses can be returned, the Court could then provide a remedy, which would demonstrate that the case is not moot. As FOA asserts, BLM's Vale District Normal Fire Year Emergency Stabilization and Rehabilitation Plan identifies protective fencing, temporary watering sites, and temporary removal of wild horses as possible actions to protect fire damaged areas. BLM does not dispute that discovery could uncover the viability of these alternatives.

A similar situation was addressed in *American Wild Horse Preservation Campaign v. Jewell*, 2015 WL 11070090 (D. Wyo. Mar. 3, 2015), *rev'd in part on other grounds*, 2016

PAGE 5 – OPINION AND ORDER

WL 7975565 (10th Cir. Oct. 24, 2016) (reversing district court's finding that BLM's actions did not violate the WFRHBA and Federal Land Policy and Management Act). In that case, a roundup had been completed and BLM argued, just as it does here, that the case was moot because the agency action was complete. *Id.* at *5. The court noted that although the roundup was complete, the court could still redress the plaintiffs' "injuries, at least in part, by ordering BLM to return to these HMAs some of the wild horses that Petitioners assert were unlawfully removed. Thus, it is not 'impossible for [the] court to grant *any* effectual relief whatever,' should Petitioners prevail." *Id.* (quoting *Chafin*, 133 S.Ct. at 1023) (emphasis in original). The court in *American Wild Horse* then concluded that because "a determination can be issued with real-world effect, whether it is an order to return horses or to cure a procedural irregularity[,] . . . Petitioners' claims are not moot." *Id.*

BLM cites to several cases that support its assertion that a completed gather cannot be undone and is therefore moot. *Am. Horse Prot. Ass'n, Inc. v. Watt*, 679 F.2d 150, 151 (9th Cir. 1982); *Fund for Animals, Inc. v. U.S. Bureau of Land Management*, 460 F.3d 13, 21-22 (D.D.C. 2006); *Defense of Animals v. Salazar*, 713 F.Supp. 2d 20, 25 (D.D.C. 2010). These cases hold that challenges to completed round-ups generally are moot. FOA correctly distinguishes those cases, however, because the plaintiffs in those cases did not argue that it might still be possible for removed horses to be returned. Instead, in those cases the plaintiffs challenged the gathers themselves, but did not go further and also challenge the decision not to return, or even consider returning, any of the removed horses.

The temporal posture of FOA's First Amended Complaint highlights the unique nature of their position in this case. FOA filed its Amended Complaint on the day the gather was completed. FOA seeks an order not only requiring BLM to correct the alleged procedural

WL 7975565 (10th Cir. Oct. 24, 2016) (reversing district court's finding that BLM's actions did not violate the WFRHBA and Federal Land Policy and Management Act). In that case, a roundup had been completed and BLM argued, just as it does here, that the case was moot because the agency action was complete. *Id.* at *5. The court noted that although the roundup was complete, the court could still redress the plaintiffs' "injuries, at least in part, by ordering BLM to return to these HMAs some of the wild horses that Petitioners assert were unlawfully removed. Thus, it is not 'impossible for [the] court to grant *any* effectual relief whatever,' should Petitioners prevail." *Id.* (quoting *Chafin*, 133 S.Ct. at 1023) (emphasis in original). The court in *American Wild Horse* then concluded that because "a determination can be issued with real-world effect, whether it is an order to return horses or to cure a procedural irregularity[,] . . . Petitioners' claims are not moot." *Id.*

BLM cites to several cases that support its assertion that a completed gather cannot be undone and is therefore moot. *Am. Horse Prot. Ass'n, Inc. v. Watt*, 679 F.2d 150, 151 (9th Cir. 1982); *Fund for Animals, Inc. v. U.S. Bureau of Land Management*, 460 F.3d 13, 21-22 (D.D.C. 2006); *Defense of Animals v. Salazar*, 713 F.Supp. 2d 20, 25 (D.D.C. 2010). These cases hold that challenges to completed round-ups generally are moot. FOA correctly distinguishes those cases, however, because the plaintiffs in those cases did not argue that it might still be possible for removed horses to be returned. Instead, in those cases the plaintiffs challenged the gathers themselves, but did not go further and also challenge the decision not to return, or even consider returning, any of the removed horses.

The temporal posture of FOA's First Amended Complaint highlights the unique nature of their position in this case. FOA filed its Amended Complaint on the day the gather was completed. FOA seeks an order not only requiring BLM to correct the alleged procedural

deficiencies with its emergency Full Force and Effect Decision, but also an order compelling BLM to return some or all of the removed horses to the HMA if possible. This is different from the cases on which BLM relies. In those cases, the plaintiffs sought injunctions to stop a gather before the challenged gather took place, and in each case the specific challenge became moot after the gather occurred. *Am. Horse Prot. Ass'n, Inc.*, 679 F.2d at 151; *Fund for Animals, Inc.*, 460 F.3d at 22; *Defense of Animals*, 713 F. Supp. 2d at 24. In the pending case, FOA seeks alternative relief and challenges not only the gather itself but also the BLM's decision not to return as soon as reasonably possible the horses to the HMA. Thus, the agency action is not complete, and FOA's claim is not moot.

At this stage of the litigation, the Court need not assess of the merits of FOA's claims. Instead, the Court need only decide whether "pertinent facts bearing on the question of jurisdiction are controverted or [if] a more satisfactory showing of the facts is necessary." *Laub*, 342 F.3d at 1093 (citation omitted). FOA argues that discovery is needed to determine whether BLM could return horses to the HMA pending NEPA compliance. This assertion involves "pertinent facts" that bear directly on BLM's defense of mootness—*i.e.* whether the emergency gather and placement of horses into the BLM's adoption program are irreversible actions that cannot be redressed by a court order. Further, limited discovery would provide a more satisfactory showing of the facts necessary to reach a decision on BLM's mootness claim.

BLM has failed to carry its "heavy" burden to show that all of FOA's claims are necessarily moot with or without discovery. *See Karuk Tribe of Cal.*, 681 F.3d at 1017 (quoting *Forest Guardians*, 450 F.3d at 461). "Pertinent facts bearing on the question of jurisdiction are controverted" in this case; thus, leave for FOA to conduct limited discovery is appropriate. *See Laub*, 342 F.3d at 1093.

PAGE 7 – OPINION AND ORDER

## CONCLUSION

Plaintiff's Motion for Leave to Take Limited Discovery (ECF 30) is GRANTED. Unless otherwise extended by the Court, within the next 90 days, FOA may take limited discovery regarding whether: (1) the removed horses can be returned to the Three Fingers HMA after post-fire restoration has been completed; (2) unburned portions of the HMA can support additional horses; (3) fencing is a viable alternative to removal to protect the fire-damaged areas from wild horses; and (4) supplemental food and water can be provided to keep wild horses from returning to the fire damaged areas. In addition, Defendant's Motion to Dismiss (ECF 24) is DENIED WITHOUT PREJUDICE. Defendant has leave to renew after 90 days and after conferring with Plaintiff.

**IT IS SO ORDERED**.

DATED this 16th day of March, 2017.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge