R. SCOTT JERGER, Oregon Bar No. 023377
Field Jerger LLP
American Bank Building
621 SW Morrison Street, Suite 510
Portland, OR 97205
(503) 228-9115
scott@fieldjerger.com

MICHAEL RAY HARRIS, Colorado Bar No. 35395 (*pro hac vice*)
Friends of Animals
Western Region Office
7500 E. Arapahoe Road, Suite 385
Centennial, CO 80112
(720) 949-7791
michaelharris@friendsofanimals.org

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PENDLETON DIVISION

| | |
|---|---|
| **FRIENDS OF ANIMALS,** | Case No. 2:16-CV-01670-SI |
| Plaintiff, | |
| v. | **REPLY IN SUPPORT OF FRIENDS OF ANIMALS' SUPPLEMENTAL BRIEF REGARDING REMEDIES AND OPPOSITION TO DEFENDANT'S SUPPLEMENTAL BRIEF ON REMEDIES** |
| **U.S. BUREAU OF LAND MANAGEMENT,** | |
| Defendant. | |

**A.**     **The Court Should Remand the 2016 Decision to the Agency with Clear, Specific Instructions that the Agency Comply with NEPA and 43 C.F.R. § 46.150(c) to Ensure that all Potential Impacts Associated with the Permanent Removal of Wild Horses from the Wildhorse Basin Pasture are Thoroughly Analyzed, Disclosed, and Mitigated if Necessary.**

In its brief regarding remedy, the Bureau of Land Management (BLM) argues that the Court remand, but not vacate the August 2016 Emergency Gather Decision. While Friends of Animals disagrees that at least partial vacatur is not warranted, the real problem with the government's position is its utter refusal to accept that it failed to comply with the National Environmental Policy Act (NEPA). Instead, the government treats this as a mere "procedural" violation, and strongly argues as to the correctness of its final decision to permanently remove the horses. Indeed, the government boldly asserts that its violation was "narrow" and that "it is highly likely that BLM will be able to substantiate its original decision . . . ." *See, e.g.*, Defendant's Supplemental Brief on Remedies ("Def.'s Remedies Br.") at 9. In other words, the government wants the Court to allow it to simply go back and paper over its original failures to reach a decision it clearly has already made.

The reality is that the Court found that the 2016 Decision authorized actions that went beyond what was necessary to abate the impact of the fire in the Wildhorse Basin Pasture. It is not a mere technicality that, in doing so, BLM completely failed to analyze and disclose the potential environmental impacts associated with its decision to permanently remove all of the horses from the WIldhorse Basin Pasture. While Friends of Animals will concede for purposes of remedy that the Court correctly concluded that BLM considered alternatives to permanent removal, the agency never analyzed the potential impacts associated with that decision, as we have consistently argued throughout this litigation. There is still no clear understanding of whether the Wildhorse Basin Pasture wild horse population will recover to pre-fire levels. Similarly, there is no consideration by BLM of whether the Riverside population will be able to handle a population level of horses that

1

Reply in Support of Friends of Animals' Supplemental Brief Regarding Remedies

was originally established for the entire herd management area (HMA). It is very plausible that pushing the entire appropriate management level (AML) into only one Pasture will impact the horse movement and patterns, and that the HMA should be expanded to include additional herd areas (HAs) that wild horses have historically inhabited.

It is no harmless error to flout the requirements of NEPA and the Council on Environmental Quality's (CEQ) regulations. *See Andrus v. Sierra Club*, 442 U.S. 347, 358-59 (1979); *Cal. Wilderness Coal. v. U.S. Dep't of Energy*, 631 F.3d 1072, 1106 (9th Cir. 2011) (finding error not harmless where agency failed to show that it had taken a "hard look" at the environmental consequences of its proposed action). Without a proper environmental analysis, the public is left with incomplete or inaccurate information, and adequate mitigation cannot be properly planned. Allowing the government to go back simply to justify its 2016 decision would not meet the requirements of NEPA that the agency prepare a rigorous analysis before going forward with a decision. *See Or. Nat. Desert Ass'n v. Jewell*, 840 F.3d 562, 568 (9th Cir. 2016); 40 C.F.R. § 1500.1(b) ("NEPA procedures must insure that environmental information is available to public officials . . . before decisions are made and before actions are taken."). If NEPA is to make any practical difference, such an analysis cannot be relegated to the role of paperwork filed after the real decisions have been made. That would make a mockery of the decision-making procedure required by law. *See Humane Soc'y of the U.S. v. Johanns*, 520 F. Supp. 2d 8, 37-38 (D.D.C. 2007) (vacating rule promulgated in violation of NEPA).

**B.    Casual Observations and Reports of Horses by BLM Employees and Contractors Since the Cherry Road Fire do not Substitute for A Proper NEPA Analysis.**

BLM now seeks to convince the Court that Friends of Animals' concerns are unfounded because horses are returning to the Wildhorse Basin Pasture. There are several

Reply in Support of Friends of Animals' Supplemental Brief Regarding Remedies

problems with this line of argument. First, there is no evidence that BLM has performed any scientific counts of horses on the HMA using approved, and consistent protocol. Moreover, in contrast to BLM's conclusions based on a few unreliable ground sightings referenced by a BLM employee, a wildlife ecologist conducted an extensive survey of the Three Fingers HMA from May 31, 2017 to June 5, 2017, including a three-hour surveillance flight. Craig Downers Decl. in Supp. of Pl.'s Mot. for Summ. J. (ECF 50-2) (hereinafter "Downer Decl.") at ¶¶ 8-18. This survey indicated that there were only 61 wild horses, 57 of which resided in the Riverside Pasture, and that cows and calves were dispersed over the majority of the HMA. Downer Decl. ¶¶ 8-12.

Second, not only has there been relatively few horses allegedly sighted outside the Riverside Pasture (between seven and twelve), in her declaration Ms. Rockefeller does not go so far as to say these observations were made in the area where the emergency removal occurred. To the contrary, as set out in paragraphs 3-8 of her declaration, the observations occurred in or near the Owyhee Reservoir north of the Honeycombs portion of the HMA. Notably, this is an area the government previously argued is not suitable for horses. *See* Pl.'s Mot. for Summ. J. (ECF 50) at 29.

Third, that some horses may have been seen in or near the Wildhorse Basin Pasture does not alone constitute a rigorous analysis of the potential environmental impacts associated with the August 2016 decision. In no way has the government shown that these horses are there permanently, that their numbers are likely to increase, or that the population of horses in the HMA is likely to become more equalized between the southern and northern pastures. Again, it is BLM's "obligation to consider every significant aspect of the environmental impact of a proposed action" and to "inform the public that it has indeed considered environmental concerns in its decisionmaking process." *Balt. Gas & Elec. Co. v. NRDC,* 462 U.S. 87, 97 (1983).

Reply in Support of Friends of Animals' Supplemental Brief Regarding Remedies

Finally, in making its argument BLM misrepresents the factual record before the Court. For instance, BLM seems to suggest that it always knew that horses would naturally return to Wildhorse Basin Pasture, and therefore never claimed that the removal was a permanent one. *See* Def.'s Remedies Br. at 9-10. But the agency has always maintained that its decision was to permanently remove all of the horses and stood by that decision throughout this litigation. *See* Defendant's Opposition to Motion for Summary Judgement ("Def.'s MSJ Opp.") (ECF 55) at 16, 24, 28. Likewise, BLM now argues that it was Friends of Animals that raised the potential problem of strong site fidelity by the horses in the HMA as a possible barrier to natural repopulation of the Wildhorse Basin Pasture. Def.'s Remedies Br. at 9-10. But again, it was BLM that repeatedly raised this issue and emphasized that it was a condition within the HMA. Def.'s MSJ Op. at 14, 25, 28. Again, it is exactly these types of misrepresentations that scream out for a more formal process under NEPA with adequate opportunity for public participation. *See Navajo Nation v. U.S. Forest Serv.*, 479 F.3d 1024, 1053 (9th Cir. 2007) (noting that a proper NEPA analysis will "foster both informed decisionmaking and informed public participation") (internal citation omitted), *rev'd on other grounds*, 535 F.3d 1058, 1113 (9th Cir. 2008); *see also Earth Island Inst. v. U.S. Forest Serv.*, 442 F.3d 1147, 1167 (9th Cir. 2006) (finding that whether the agency misunderstood or misrepresented data, it abused its discretion under NEPA).

**C.    Vacatur Would be Proper in this Case and is Within the Discretion of the Court.**

BLM incorrectly asserts that vacatur would result in "disruptive consequences" and that the Court should apply the standard for injunctive relief. Def.'s Opp. at 7-8. As an initial matter, vacatur is the normal remedy for violations of the Administrative Procedure Act (APA), such as NEPA violations. *Alaska Conservation Council v. U.S. Army Corps of Eng'rs*, 486 F.3d 638, 654 (9th Cir. 2007) ("Under the APA, the normal remedy for an unlawful

Reply in Support of Friends of Animals' Supplemental Brief Regarding Remedies

agency action is to 'set aside' the action."), *rev'd on other grounds sub nom. Coeur Alaska, Inc. v. Southeast Alaska Conservation Council*, 557 U.S. 261 (2009).

Thus, the appropriate inquiry when deciding whether vacatur is an appropriate remedy here is not whether remand without vacatur will cause irreparable harm **to the Plaintiffs** as BLM would argue, but instead whether vacatur itself will cause severe harm to the agency, the environment, or the public interest. *See Ctr. for Food Safety v. Vilsack*, 734 F. Supp. 2d 948, 951 (N.D. Cal. 2010) ("[T]he Ninth Circuit has only found remand without vacatur warranted by equity concerns in limited circumstances, namely serious irreparable environmental injury."); *Cal. Cmtys. Against Toxics v. U.S. EPA*, 688 F.3d 989, 992 (9th Cir. 2012).

Here, the government has not demonstrated that equitable considerations support a deviation from the standard remedy for NEPA violations—vacatur. *See Klamath-Siskiyou Wildlands Ctr. v. Nat'l Oceanic & Atmospheric Admin. Nat'l Marine Fisheries Serv*., 109 F. Supp. 3d 1238, 1242 (N.D. Cal. 2015) (finding vacatur appropriate unless it "would cause serious and irremediable harms that significantly outweigh the magnitude of the agency's error") (internal citation omitted). First, the facts and circumstances presented here suggest that there will be no disruptive consequences from vacatur. BLM failed to provide any monitoring results from after the fire indicating the area could not support a viable population of wild horses, and their policy indicates that horses (and cattle) may be able to return one growing season after an application of herbicide for annual grass control and two growing seasons following a seeding. Def.'s Remedies Br. at 14. Moreover, a wildlife ecologist that reviewed the condition of the range after the fire indicated that the range could support the return of the wild horses BLM removed pursuant to the 2016 Emergency Roundup Decision. Downer Decl. at ¶¶ 7-18.

Reply in Support of Friends of Animals' Supplemental Brief Regarding Remedies

Second, the agency's failure to comply with NEPA was a serious deficiency. *Or. Nat. Desert Ass'n v. Zinke,* 250 F. Supp.3d 773, 774-75 (D. Or. 2017) (finding BLM's failure to follow NEPA procedures was a serious flaw that weighed in favor of vacatur); *Cal. Wilderness Coal.*, 631 F.3d at 1106-07 (remanding and vacating decision after finding agency erred by failing to demonstrate it took the "hard look" required by NEPA). Moreover, without conducting a true environmental review of the impacts associated with the removal, there is serious doubt that the agency chose correctly.  **Indeed, just this month, BLM acknowledged that in some cases it may need to repopulate an HMA where horses were removed after a fire.** *See* Press Release, *BLM To Release Wild Horses To Sands Basin Herd Management* Area.[1] In addition, the wildlife ecologist that surveyed the Three Fingers HMA after the fire found substantial evidence that the area could support the return of wild horses. Downer Decl. at ¶¶ 7-18. Certainly, failure to consider this potential here would prove to be a "fundamental flaw" in the 2016 decision if there are legitimate, yet unexplored barriers to repopulation of the Wildhorse Basin Pasture. *See Pollinator Stewardship Council v. EPA*, 806 F.3d 520, 531 (9th Cir. 2015) (noting that agency decisions must be vacated where "fundamental flaws" would prohibit the agency from promulgating the same decision on remand).

At the end of the day, the Court should remand and at least partially vacate the 2016 decision to the extent it authorized a permanent removal for which BLM failed to comply with NEPA. There is no doubt of the seriousness of the violation here.

In the alternative, the Court could use its equitable authority to impose alternative measures to address BLM's violations. For example, the Court could order BLM to either return horses illegally removed or address its NEPA deficiencies and issue a new decision

---

[1] *Available at* https://www.blm.gov/press-release/blm-release-wild-horses-sands-basin-herd-management-area (last visited June 28, 2018).

Reply in Support of Friends of Animals' Supplemental Brief Regarding Remedies

that complies with the law within one year. *See Hecht v. Bowles,* 321 U.S. 321, 329 (1944) ("The essence of equity jurisdiction has been the power of the Chancellor to do equity and mould each decree to the necessities of the particular case. Flexibility rather than rigidity has distinguished it."); *Mont. Wilderness Ass'n v. Fry*, 408 F. Supp. 2d 1032, 1034 (D. Mont. 2006) ("The district court's equitable powers are broad, and it is within the court's authority to fashion a remedy that fits the particular facts of the case before it."); *Ctr. for Food Safety*, 734 F. Supp. 2d at 955 (limiting the timing of vacatur in a manner that would not require the destruction of a genetically engineered crop that had already been planted).

### CONCLUSION

For all the foregoing reasons, the Court should vacate and remand the August 2016 Emergency Gather Decision.


Dated:  June 29, 2018                        Respectfully submitted,

                                             *s/Michael Ray Harris*
                                             MICHAEL RAY HARRIS, (pro hac vice)
                                             Friends of Animals
                                             7500 E. Arapahoe Road, Suite 385
                                             Centennial, CO 80112
                                             michaelharris@friendsofanimals.org

                                             *s/R. Scott Jerger*
                                             R. SCOTT JERGER, Oregon Bar No. 023377
                                             Field Jerger LLP
                                             American Bank Building
                                             621 SW Morrison Street, Suite 510
                                             Portland, OR 97205
                                             scott@fieldjerger.com

                                             *Attorneys for Plaintiff*

Reply in Support of Friends of Animals' Supplemental Brief Regarding Remedies

**CERTIFICATE OF COMPLIANCE**

This brief complies with the applicable word-count limitation under LR 7-2(b) because it does not exceed the page limit established in the Court's order adopting the parties proposed scheduling order for supplemental briefs on the issue of remedy issued April 18, 2018 (ECF 63).

Dated:  June 29, 2018                       Respectfully submitted,

_s/Michael Ray Harris_
MICHAEL RAY HARRIS, (pro hac vice)
Friends of Animals
Western Region Office
7500 E. Arapahoe Road, Suite 385
Centennial, CO 80112
michaelharris@friendsofanimals.org


_s/R. Scott Jerger_
R. SCOTT JERGER, Oregon Bar No. 023377
Field Jerger LLP
American Bank Building
621 SW Morrison Street, Suite 510
Portland, OR 97205
scott@fieldjerger.com

*Attorneys for Plaintiff*

8

Reply in Support of Friends of Animals' Supplemental Brief Regarding Remedies